## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:17CR00020-004 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **GRANDY NESTER,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; John T. Stanford, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

The defendant has filed a motion seeking relief under 28 U.S.C. § 2255.  He has raised several claims, including an ineffective assistance of counsel claim alleging that his counsel failed to file an appeal.  The United States has filed a motion to dismiss, to which the movant has responded.  I appointed counsel and held an evidentiary hearing limited to the appeal issue, which I took under advisement.  After reviewing the record, I will grant the motion to dismiss.

I.

After pleading guilty, Nester was sentenced by this court on June 14, 2018, to a total term of 295 months imprisonment, consisting of 235 months on Count One and 60 months on Count Four, to be served consecutively.  Count One of the Indictment charged Nester with conspiring to manufacture, distribute, and possess

with the intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II controlled substance, and using a communication facility in committing a felony controlled substance offense, all in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), 843(b), (d).  Count Four charged that he knowingly used and carried in relation to, and possessed in furtherance of, a drug trafficking crime (the crime charged in Count One), a firearm, in violation of 18 U.S.C. § 924(c).

In his § 2255 motion, Nester contends that his trial counsel was ineffective because he promised Nester a sentence of only 180 months, the statutory minimum mandatory imprisonment, and failed to note an appeal.  In addition, Nester argues that the charge in Count Four is unconstitutional and that he was coerced into pleading guilty.  He further contends that his counsel was ineffective in not challenging the guideline sentencing range based on a two-point leadership role enhancement and the drug purity and quantity.  Finally, Nester asserts that his counsel was ineffective because he failed to communicate with Nester about his case.

## II.

To state a viable claim for relief under § 2255, a defendant must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such sentence"; or (3)

that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The petitioner bears the burden of proving grounds for a § 2255 motion by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958). Where the records conclusively show that the petitioner is entitled to no relief, summary dismissal is appropriate. *Raines v. United States*, 423 F.2d 526, 529 (4th Cir. 1970). In addition, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (citation omitted).

Criminal defendants have a Sixth Amendment right to effective legal assistance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ineffective assistance claims, however, are not lightly granted — "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686. To that end, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's alleged deficient performance. *Id.* at 687. To satisfy the prejudice prong of *Strickland*, a defendant must show that there is a reasonable probability that, but

- 3 -

for counsel's unprofessional error, the outcome of the proceeding would have been different. *Id.* at 694.

III.

*A.  Failure to Appeal.*

I make the following findings of fact based on the evidence presented at the hearing regarding the appeal issue and Nester's prior testimony under oath.

At his change of plea and sentencing hearings, Nester was represented by retained counsel David B. Freedman, an experienced criminal defense attorney who has practiced for more than 35 years.  Before accepting his plea of guilty, Magistrate Judge Pamela Meade Sargent asked, "Has anyone made any promises to any of you other than those contained in the plea agreement to cause you to want to plead guilty, Mr. Nester?"  Guilty Plea Hr'g Tr. 35, ECF No. 759.  Nester replied, "No, ma'am." *Id.*  Judge Sargent then asked if anyone had "attempted in any way to force you to plead guilty in this case," to which he again replied, "No, ma'am." *Id.*  He further stated that he understood the statutory maximum penalties for his offenses, as well as the mandatory minimum 10-year sentence for Count One and the five-year sentence for Count Four, to be served consecutively. *Id.* at 37-38.

Judge Sargent further stated,

> Mr. Nester, I also want to make sure that you understand that you are stipulating to the application of the Sentencing Guideline 2D1.1 which lists a base offense level for your offense at 36, and that's based on a drug weight, an applicable drug weight of 1.5 kilograms of crystal

- 4 -

methamphetamine or ICE.  Now, you agree and you are stipulating to that, correct?

*Id.* at 39.  Nester again replied, "Yes, ma'am."  *Id*.  Judge Sargent explained that "normally what occurs is the judge selects a sentence from within a guideline range, and the guideline range . . . will not be determined until after a presentence report has been completed and a sentencing hearing held."  *Id.* at 44.  Nester indicated that he understood.  Judge Sargent further explained that "the judge has the authority in some circumstances to depart from the guidelines and to impose a sentence that is either more severe or less severe than the sentence called for by the guidelines."  *Id*. Nester again stated that he understood.

Judge Sargent then asked if Nester understood that "it's entirely possible that your sentencing under the sentencing guidelines, even within the sentencing guideline range, will call for a sentence of incarceration of greater than the mandatory minimum sentence that's called for."  *Id.* at 45.  Nester agreed.  Finally, she asked if he understood that "any sentence that's ultimately imposed in this case may be different from any estimate your attorney has given you," to which Nester replied, "Yes, ma'am."  *Id.* at 47.

At the conclusion of Nester's sentencing hearing, I advised Nester of his right to appeal and of the deadline for filing a notice of appeal.  I told him, on the record, that the clerk would file an appeal on his behalf if requested and that he could apply

for leave to appeal without prepayment if he could not afford the cost of filing an appeal.  Sent. Hr'g Tr. 12, ECF No. 750.

At the evidentiary hearing regarding the appeal issue, Nester testified that immediately after his sentencing hearing, he asked Freedman to appeal because he was upset about the length of his sentence.  He stated that Freedman had told him I was known to give mandatory minimum sentences and that he had therefore expected a sentence of 180 months rather than a guideline sentence of 295 months. Nester testified that Freedman had told him that he likely could not appeal because he had waived his right to appeal in his plea agreement.  Freedman assured him that he would try to secure a government motion for reduction in sentence based on substantial assistance, pursuant to Federal Rule of Criminal Procedure 35(b).

Nester met with Freedman again a few hours later during a hearing before the magistrate judge.  Nester testified that he again asked Freedman about appealing, and Freedman responded that he would look into whether Nester could appeal. Nester was then taken to the jail.  He testified that he tried to call Freedman about a week later, but Freedman would not accept his calls.

Nester sent several letters to Freedman after he was sentenced.  His first two letters made no mention of appealing.  Two months after he was sentenced, Nester sent a letter to Freedman asking about the status of his appeal.  The letter was returned to him three weeks later.

Nester testified that in addition to being upset about the length of his sentence, he wanted to appeal because his Plea Agreement had specified a base offense level of 36, and the Presentence Investigation Report had recommended a two-point leadership role enhancement. Freedman had filed an objection to the enhancement, but he withdrew the objection orally at the sentencing hearing.

Freedman testified at the hearing about his typical practice when a client asks him to appeal. Where Freedman negotiated a plea agreement containing an appeal waiver and the client wishes to appeal, Freedman considers it improper to note the appeal himself. Instead, in such instances, he has provided the client with a pro se notice of appeal form and ensured that the appeal was filed. Evidentiary Hr'g Tr. 22-23, ECF No. 835. Had Nester directed Freedman to appeal, Freedman would have provided him a pro se motion and ensured that it was filed. *Id.* at 26.

Freedman does not recall Nester asking him to appeal, nor does he recall Nester being upset with the sentence he received.

Freedman testified that he withdrew his objection to the two-level enhancement because he was concerned that pursuing the objection would jeopardize Nester's chances of receiving a sentence reduction under Rule 36(b). Freedman stated, "I know I would not have wanted to appeal Mr. Nester's sentencing because I felt like that would have ended any possibility of him getting a Rule 35 in the future because that would be in violation of his plea agreement." *Id.* at 29. More

specifically, Freedman explained that "I almost never have evidentiary hearings before a court prior to sentencing because I've never known those to go well for defendants." *Id.* at 31.  He stated that he had planned to focus his argument on Nester's level of cooperation, and he feared that the prosecutor "was going to put on witnesses to go extensively into how active Mr. Nester was, and I felt like that would be counter to my argument to the court that he was very cooperative and remorseful." *Id.* at 31-32.  Freedman testified that he "talked to Mr. Nester about that beforehand and he was in agreement." *Id.* at 32.

Freedman further testified that he has "never tried to predict what a sentence would be." *Id.* at 30.  Freedman was in fact "concerned he might be a career offender because he had the two felonies that he did. *Id.*  "I told him . . . the only way he can get under statutory minimum is through cooperation.  But it is not my practice to predict what sentence individuals can get." *Id.*

I do not find Nester's testimony credible.  I credit Freedman's testimony that if Nester had asked to appeal, he would have provided him a form notice of appeal and made sure it was timely filed, in accord with his usual practice, because he believes that it is unprofessional for him to negotiate a plea agreement with an appeal waiver and then appeal.  Additionally, the main concern was to persuade the government to file a motion for reduction of sentence for substantial assistance under Rule 35(b) after sentencing, and to appeal would have severely undermined that

opportunity, since it would have been a violation of the Plea Agreement.  For these reasons, I find that Nester did not ask Freedman to file an appeal on his behalf.

When a defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," I must first determine "whether counsel in fact consulted with the defendant about an appeal."  *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). Consulting in this context requires "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id.*  If counsel consulted with his client about filing an appeal, his performance is unreasonable only if he failed to follow the client's clear instructions. If, however, he did not consult with his client, I must determine whether that failure to consult amounts to deficient performance.  The defendant also must establish prejudice under *Strickland*, meaning he must show "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  *Id.* at 484.  "[W]hen counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."  *Id.*  "The defendant need not show that his appeal has merit."  *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015).

On the record before me, I find that Freedman did not consult with Nester about filing an appeal.   However, Nester has failed to show that the lack of consultation amounted to deficient performance or that it prejudiced him. In *Flores-Ortega*, the Supreme Court held that

> counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

528 U.S. at 480.   Nester has not met his burden of establishing either scenario.

There were no nonfrivolous grounds for appeal in this case, and Freedman had no reason to think that a rational defendant in Nester's position would want to appeal.   Because Nester had waived his right to appeal and was seeking a substantial assistance motion, filing an appeal would have been against his interests, as explained above.   I have already found that Nester did not reasonably demonstrate to Freedman that he was interested in appealing.   Nester therefore has not satisfied the test set forth in *Flores-Ortega*, and he is not entitled to relief on his claim of ineffective assistance based on failure to appeal.   I will dismiss Ground Three.

### B.  Other Claims.

Regarding Nester's remaining claims, I first address Nester's contentions that attorney Freedman assured him he would receive a shorter sentence if he pled guilty, and that Freedman erroneously advised him that his exposure would have been

- 10 -

significantly greater had he not pleaded guilty.  Nester's statements under oath at his change of plea hearing belie these assertions.  He stated that no one had made any promises to him aside from those in the Plea Agreement that had caused him to want to plead guilty.  He testified that he understood that the length of his ultimate sentence would be up to me and could vary from any estimate that his attorney had given him.  He further testified that no one had attempted in any way to force him to plead guilty, which clearly contradicts his assertion in his § 2255 motion that counsel coerced him into pleading guilty.

Absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false."  *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted).  Moreover, I credit Freedman's testimony that it is not his practice to predict the length of sentence a client will receive.  Nester is not entitled to relief on Ground One, and I will grant the government's motion to dismiss that ground.

In Ground Two, Nester claims that his 924(c) conviction is unconstitutional, but he fails to explain the basis for that contention.  "[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further

investigation" by the Court. *Dyess*, 730 F.3d at 359–60 (citation omitted). Nester is not entitled to relief on Ground Two, and I will dismiss that claim.

Elsewhere in his § 2255 motion and response to the government's motion to dismiss, Nester contends that Freedman was ineffective in failing to challenge the two-point leadership role enhancement or the drug purity and quantity. Nester offers no explanation of these claims either and I will dismiss them because they are too conclusory to warrant further investigation.

In any event, Nester has failed to meet his burden of showing deficient performance or prejudice under *Strickland*. Freedman filed an objection to the two-level enhancement, to which the probation officer responded. Nester has offered no evidence to contradict the probation officer's statement of the basis for the enhancement. Based on his testimony at the hearing, which I credit, Freedman was justified in withdrawing his objection to the enhancement because pursuing the objection would have jeopardized Nester's chances of the government making a Rule 35(b) motion. His decision not to pursue the objection does not amount to an unprofessional error.

Nester further alleges his counsel was ineffective because he failed to communicate with Nester after sentencing. Aside from Nester's own testimony, the record contains no evidence that Nester called Freedman in the weeks following his sentencing. While Freedman admitted at the hearing that his office does not always

document phone calls from clients, he had no recollection of Nester contacting him and no record of such a call.  I find Freedman's testimony more credible than Nester's on this issue.  Furthermore, Nester sent Freedman two letters which were not returned, and neither of those letters mentioned a desire to appeal.  Nester therefore cannot show prejudice as required by *Strickland* because he has failed to demonstrate that the outcome of his case would have been any different had Freedman communicated with him after he was sentenced.  I will grant the motion to dismiss this claim.

IV.

For these reasons, the United States' motion to dismiss will be granted and the § 2255 motion will be dismissed.  A separate final order will be entered herewith.

DATED:  May 14, 2020

/s/  JAMES P. JONES
United States District Judge